.NASH v. ALPINE IRR. CO. et al.

No. 3603.    Decided April 14, 1921.    (197 Pac. 603.)

1.  EVIDENCE—THAT BOOKS OF IRRIGATION CORPORATIONS IN EARLY
    DAYS NOT ALWAYS ACCURATELY KEPT A MATTER OF COMMON
    KNOWLEDGE. It is a matter of common knowledge in Utah that
    in the early history of the irrigation corporations of the state
    the books and records of such corporations were not always
    kept according to the rules of bookkeeping, and that the pro-
    ceedings of the officers and directors were not always fully and
    correctly recorded.

2.  CORPORATIONS—DEFENDANT IRRIGATION COMPANY AND DIRECTORS
    HELD TO HAVE HAD BURDEN TO SHOW PLAINTIFF NOT OWNER OF
    STOCK. In an action to require an irrigation company and its
    directors to transfer to plaintiff on the books of the corporation
    the stock claimed by her, where defendants admitted that ac-
    cording to the books of the corporation plaintiff was the owner
    of all the shares of stock in controversy except one share, the
    burden was on them to show that she was not such owner.

3.  CORPORATIONS—EVIDENCE INSUFFICIENT TO SUSTAIN BURDEN AS TO
    SHOWING OWNERSHIP OF STOCK OF DEFENDANT IRRIGATION COM-
    PANY. In an action to require an irrigation company and its
    directors to transfer to plaintiff on the books of the corporation
    the stock claimed by her, evidence *held* insufficient to sustain
    defendants' burden of proof to show that plaintiff was not the
    owner of the shares of stock in controversy.

Appeal from District Court, Fourth District, Utah Coun-
ty; *A. B. Morgan,* Judge.

Action by Rhoda Y. Nash against the Alpine Irrigation
Company and others. From judgment for plaintiff, defend-
ants appeal.

JUDGMENT MODIFIED, and, as modified, affirmed.

*Evans & Sullivan,* of Salt Lake City, for appellants.

*Booth & Brockbank,* of Provo, for respondent.

FRICK, J.

The plaintiff brought this action in equity in the district court of Utah county to require the defendants, the Alpine Irrigation Company, a corporation, and the other defendants as directors and secretary of said corporation, to transfer upon the books of said corporation and to issue to her a certificate for 13 shares of what is called primary water stock and 2 shares of what is called secondary stock, of all of which 15 shares she alleges she is the owner, and as such entitled to have the same transferred. in her name upon the books of said corporation; that she has made demand upon said defendants to issue said certicate and to transfer said stock, which demand has been refused.

The corporation is organized merely as a convenient means of distributing water among its stockholders, who are the real owners and users thereof for irrigation purposes, and which water is represented by the stock issued by the corporation. Each share of stock represents a certain quantity of water, and the water is distributed in proportion to the number of shares owned by each stockholder.

The defendants filed a joint answer in which they admitted that the plaintiff is the successor in interest of one Ephraim Nash, deceased, and, according to the books of said corporation, is the owner of the 13 shares of primary stock, but denied that she is the owner of said 2 shares of secondary stock. The defendants also, in substance, aver that while according to the books of said corporation plaintiff appears to be the owner of said 13 shares of stock, nevertheless in truth and in fact she is not such owner, for the reason that by inadvertence and mistake a greater number of shares of stock was issued to said Ephraim Nash in his lifetime than he owned or was entitled to, and that the plaintiff, as his successor in interest, is claiming a greater number of shares than she owns or is entitled to; that the plaintiff is the owner of only 6 shares of primary stock and no more, which shares the defendants are, and always have been, ready and willing to transfer to her name upon the books of said corporation, and to issue to her a certificate therefor.

The pleadings go into unnecessary details, to which it is not necessary to refer.

The district court, after hearing the evidence, made findings of fact and conclusions of law in favor of the plaintiff, and entered judgment requiring the defendants to transfer on the books of the corporation in the name of the plaintiff 13 shares of primary stock and 2 shares of secondary stock, and to issue to her a certificate in due form for said shares.

Defendants appeal and assail the findings of fact and conclusions of law in certain particulars, and also urge that the district court erred in requiring the defendants to transfer and to issue certificate for more than 6 shares of primary stock.

We can, we think, intelligently dispose of the question raised without going at length into the findings of fact, and without stating the evidence in detail. We shall therefore confine ourselves to such facts only as are deemed necessary to an understanding of the propositions decided.

As already indicated, the controversy arises over 7 shares of primary and 2 shares of secondary water stock, making 9 shares in all, and when the 6 shares are added to said 9 shares it makes the 15 shares demanded by the plaintiff.

The defendants contended in the court below, and now contend, that by inadvertence and mistake there were issued to Ephraim Nash, deceased, the former husband of the plaintiff, and her predecessor in interest, 7 shares of primary and 2 shares of secondary water stock in excess of what he owned and was entitled to in said corporation. The corporation in question was organized for the purposes before stated in 1880, or more than 40 years ago. Ephraim Nash was one of the incorporators and one of the original subscribers for stock. He continued a stockholder until his death, some time in 1910. He died, leaving a will by which he bequeathed to the plaintiff his shares of stock, and the same was duly distributed by the district court of Utah county, acting as the probate court of said county. During the years 1918 and 1919, two of the defendants, as officers of the defendant corporation, made what they call a thorough examination of the stock books, stock ledgers, and other records of said corporation, and, upon such examination they insist that they

discovered that during the lifetime of said Ephraim Nash
there was issued to him an excessive amount of stock, and
that such stock had been issued without any apparent author-
ity from the corporation. . These officers, from that examina-
tion, assume that the excessive issue occurred as follows:
That said Nash had lost certain of his stock certificates, and
that in lieu of the lost certificates had caused a greater num-
ber of shares to be issued to him by the new certificates than
were included in the lost ones. The foregoing assumption is
based upon the bare fact that the new certificates issued in
lieu of the old ones were issued for several shares of stock
in excess of what the lost ones contained, and that the rec-
ords of the corporation do not show any authority for issu-
ing the excessive shares. It appears that Ephraim Nash was
the president of the corporation for a long time, and was con-
nected with it from its organization in some way until his
death; that the books of the corporation, as is usually the
case in our country corporations, were somewhat loosely, and
perhaps incorrectly, kept. There is some evidence emanating
from a witness who acted as one of the early secretaries of
the corporation that Ephraim Nash, as the president of the
corporation, had directed the witness to issue 6 additional
shares of stock to Nash, and "that the board had allowed at
their last meeting." The incident, the witness said, occurred
25 years or more before the trial. There are also other
circumstances from which inferences may be deduced that
the additional shares of stock were not issued to Ephraim
Nash through inadvertence or mistake, but that he obtained
them rightfully. For example, it is admitted by all of the
defendants that Ephraim Nash had, for more than 25 years,
always used the water represented by what they claim were
the excessive shares of stock, except for one share; that he
had always, at all stockholders' meetings, voted all of said
shares of stock without objection or protest; that he had al-
ways paid the annual assessments thereon which were levied
against said stock for the maintenance of the irrigation sys-
tem by means of which he obtained water to irrigate his
lands, and had always claimed to be the owner of said stock.

There is nothing to controvert the foregoing indicia of ownership, except that the books and records of the corporation do not show any authority for the issuance of the extra shares of stock; that is, the 9 (in fact only 8) shares. When we keep in mind, what is common knowledge in this state, that in the early history of the irrigation corporations of this state the books and records of those corporations were not always kept according to the rules of bookkeeping, and that the proceedings of the officers and directors were not always fully and correctly recorded, it is easy to understand why some discrepancies may appear that cannot be explained by those who in after years are called upon to conduct the business affairs of a particular corporation. That such was the situation is made clear from an examination of the books and records of the defendant corporation which were produced in evidence in this case. It may well be that if Ephraim Nash could be called on to testify he might satisfactorily explain the existing discrepancies. His lips have, however, been sealed by death, and hence the imperfections and discrepancies of the books and records of the defendant corporation must be viewed in the light of all the facts and circumstances, and not only from a mere inspection of the books themselves. If the ownership of water stock in this state shall be based upon such a frail tenure as may be disclosed by inaccurately kept books and records of our early irrigation corporations, and especially where, as here, all the rights of ownership have been exercised and insisted upon without protest for more than a quarter of a century, and where the original owner is dead and cannot explain the apparent flaws in his title, then we fear many of those who succeed to the rights of their ancestors might fail in sustaining their right and title to their stock in our courts. To so hold might easily result in flagrant injustice. Indeed, if the plaintiff is to be deprived of the 8 shares of water stock here in controversy, she necessarily will be greatly, if not irreparably, damaged. Moreover, in view that the defendants admitted that according to the books of the corporation the plaintiff was the owner of all of the shares of water

stock in controversy, except one share, the burden of **2, 3**
proof was cast upon them to show that she is not such
owner.   In our judgment, they have failed to sustain the
burden the law has cast upon them.

There is one share of stock, however, concerning which
there is no doubt respecting its ownership.   That share was
sold by Ephraim Nash during his lifetime, and while the
transfer was never deducted from the number of shares
owned by him, the water represented by that share for many
years has been, and at the time of the trial was being, used
by one Little, the true owner thereof.   Ephraim Nash, for
many years, had ceased to use the water represented by that
share, and, so far as the record discloses, never claimed it
after he sold it.   It is not easy to understand how, in view
of the undisputed evidence, the court could sustain plain-
tiff's right to that share.   The water right arising from even
one share of stock is quite valuable in this arid region, and,
under certain circumstances, the deprivation of the use there-
of might result in much injury and loss.   The court therefore
erred in finding that the plaintiff was the owner of and en-
titled to have transferred on the books of the corporation
all of the 9 shares of water stock in dispute; that is, that the
plaintiff was entitled to a transfer of 13 shares of primary
stock and 2 shares of secondary stock.   From the undisputed
evidence it appears that plaintiff is entitled to only 12 shares
of primary stock and 2 shares of secondary stock.   This in-
cludes the 6 shares that the defendants were always willing
to transfer.

The findings of fact and conclusions of law are therefore
modified as hereinbefore indicated, and the judgment requir-
ing the defendant to transfer upon the books of the corpo-
ration 13 shares of primary stock and 2 shares of secondary
stock is also modified by excluding one share of primary
stock, and in all other respects said findings of fact, conclu-
sions of law, and judgment are approved and affirmed.   It
is therefore ordered and adjudged that the defendants be
and they are hereby, required to transfer upon the books of
the corporation, in the name of the plaintiff, 12 shares of

primary stock, including the 6 shares admitted by them, and 2 shares of secondary stock, and to issue and deliver to said plaintiff a certificate in due form for said shares of stock. It is further ordered that neither party shall recover costs on this appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.